## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| AMERICAN DAIRY QUEEN CORPORATION, | CIVIL NO. 11-358 (RHK/TNL) |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| GUY A. BLUME, BLUME INVESTMENTS, LLC, and ROYAL PROFESSIONAL SOLUTIONS, LLC, | |
| Defendants. | |

William L. Killion, **FAEGRE & BENSON LLP**, 90 South Seventh, Suite 2200, Minneapolis MN 55402, for Plaintiff; and

Guy A. Blume, 4309 Northwest Fifth Street, Ankeny IA 50023, pro se.

## I.    INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss Plaintiff[']s Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (DOCKET NO. 34); Defendants' Motion to Strike Answers (DOCKET NO. 37); and the Order to Show Cause (DOCKET NO. 48). Defendants' Motions have been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). *See* DOCKET NO. 47. A hearing was held on the motions

and the Order to Show Cause.  William Killion and Shelly Huber O'Callahan appeared on behalf of Plaintiff.  There was no appearance by or on behalf of Defendants.

For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff[']s Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (DOCKET NO. 34) be **DENIED**; Defendants' Motion to Strike Answers (DOCKET NO. 37) be **DENIED WITHOUT PREJUDICE**; and pursuant to the Order to Show Cause (DOCKET NO. 48), the Clerk of Court be directed to **ENTER DEFAULT** against Defendants Blume Investments, LLC and Royal Professional Solutions, LLC under Fed. R. Civ. P. 55(a).

## II.    BACKGROUND

Plaintiff American Dairy Queen Corporation (ADQ) commenced this action in the United States District Court for the District of Minnesota by Complaint (DOCKET NO. 1) on February 11, 2011, asserting claims for damages, declaratory relief, and injunctive relief against Defendants Guy A. Blume (Blume), Blume Investments, LLC (Blume Investments), and Royal Professional Solutions, LLC (Royal).

Of particular relevance to the issues before this Court, ADQ alleges as follows: ADQ is a Delaware corporation that maintains its principal place of business in Edina, Minnesota.  COMPL. at ¶ 2, Feb. 11, 2011.  Blume is a citizen of the State of Iowa.  *Id.* at ¶ 3.  Blume Investments is a limited liability company established under the laws of the

State of Iowa and its members are Guy Blume and Pamela Blume.[1] *Id.* at ¶ 4.  Pamela Blume is also a citizen of Iowa.  *Id.* at ¶¶ 4-5.  Royal is a limited liability company established under the laws of the State of Iowa and its members are Guy Blume and Pamela Blume.[2] *Id.* at ¶ 5.

ADQ further alleges as follows: "Blume Investments operated a DAIRY QUEEN® store in Johnston, Iowa, as the assignee of a franchise agreement entered in or about August 1998 by and between ADQ and Lindaman Enterprises, Inc."  COMPL. at ¶ 17.  This assignment occurred, with ADQ's consent, on May 15, 2008, and will hereinafter be referred to as the "Johnston Agreement." *Id.* at Ex. A. "On or about May 1, 1981, ADQ entered into a franchise agreement with Bruce and Marla Lenocker for the operation of a DAIRY QUEEN® restaurant in Audubon, Iowa . . . . On or about September 1, 2006, the Lenockers assigned the franchise agreement to Royal." *Id.* at ¶ 22.  This assignment will hereinafter be referred to as the "Audubon Agreement." *Id.* at Ex. E.  Like the other agreements, on or about July 28, 2009, the "Grinnell Agreement" was transferred to Blume through an assignment agreement.  *Id.* at ¶¶ 26-27, Exs. H, I, J.

ADQ's claims arise out of allegations that Blume, "on his own behalf and on behalf of his alter ego companies" (i.e., Blume Investments and Royal), began a campaign to extort money from ADQ and defamed ADQ.  COMPL. at ¶ 30.  In addition to committing intentional torts, ADQ alleges that Defendants breached the implied covenant

---

[1] Blume contends that Pamela Blume's interests in the Defendant entities were transferred to him within a divorce decree.

[2] Blume contends that Royal is an Oklahoma limited liability corporation. ANSWER TO COMPL. at 5, Apr. 15, 2011.

of good faith and fair dealing within the Agreements between the parties. Therefore, ADQ's action seeks a declaratory judgment terminating the Agreements, injunctive relief, and damages.

Defendants were served with the Summons and Complaint on February 13, 2011. *See* DOCKET NO. 3. On March 3, 2011, Scott E. Korzenowski and J. Mark Dady, of Dady & Gardner, P.A., filed Notice of Appearances (DOCKET NO. 4) as counsel of record for Defendants.  Thereafter, the parties entered into two stipulations extending Defendants' time to answer the Complaint. *See* DOCKET NOS. 5-8. Based upon the second stipulation among the parties, Defendants' answer to the Complaint was due on April 21, 2011. *Id.* at 8.

On April 15, 2011, Blume—without the aid of counsel—filed an Answer to Complaint (DOCKET NO. 9)[3] on behalf of himself, Blume Investments, and Royal. In his Answer to Complaint, Blume contends that "[n]o contract exists that gives this Court personal jurisdiction over [him]"; Blume requested that the Complaint be "dismissed for lack of jurisdiction"; Blume requested a ruling from the Court that the Johnston Franchise Agreement is invalid; and Blume requested that "all monies deposited in escrow be ordered returned to Blume." ANS. TO COMPL., at 2, Apr. 15, 2011. Blume also asserted various affirmative defenses.[4] On April 18, 2011, Blume commenced an action against

---

[3] Blume thereafter attempted to "clawback" his Answer to Complaint using the procedures for recalling a document electronically filed in error via CM/ECF.

[4] Blume asserts affirmative defenses that are of particular relevance to the matters before this Court: "Plaintiffs lack any binding contract giving Jurisdiction to this court. This Court is not the Correct Venue." *Id.* at 10. "Plaintiffs['] claims are barred either in

American Dairy Queen and others in the United States District Court for the Southern District of Iowa. *Guy Blume v. American Dairy Queen, et al.*, 4:11-cv-178 RP/CFB (S. D. Iowa, Compl. filed April 18, 2011).

Thereafter, Defendants' counsel filed Dady & Gardner, P.A.'s Motion to Withdraw as counsel (DOCKET NO. 12) and also filed a Request for Extension of Time to Answer or Otherwise Respond to Complaint (DOCKET NO. 14). The Court granted the request for extension and provided Defendants until May 23, 2011, to answer or otherwise respond to Plaintiff's Complaint. *See* DOCKET NO. 15.

On May 6, 2011, prior to the hearing on Dady & Gardner, P.A.'s Motion to Withdraw, Blume filed Answer to Complaint Notice of Removal (DOCKET NO. 22) on behalf of himself, Blume Investments, and Royal.  Blume also filed Defendant[s'] Motion to Dismiss Plaintiff['s] Complaint for Lack of Subject Matter Jurisdiction and Improper Venue (DOCKET NOS. 26-29).[5] Blume also filed exhibits in support of his contention that the Defendant entities transferred their respective rights under the Audubon and Johnston Agreements to Blume on May 19, 2009, when he executed a

---

whole or in part by the absence of subject matter Jurisdiction, the . . . franchise agreement has [an] Arbitration clause, protections under Iowa Code 523H, and the absence of a binding contract in Johnston, IA." *Id.*  "Plaintiffs lack U.S. Constitutional standing to maintain the claims asserted in the complaint." *Id.* at 11.

[5] Blume also attempted to "clawback" these documents using the procedures for recalling a document electronically filed in error via CM/ECF. *See also supra* n. 3.

transfer agreement between himself and the Defendant entities.[6] *See* DOCKET NO. 25, at pgs. 51-52 of 53.

On May 16, 2011, Blume, on behalf of himself and Defendant entities, filed Defendant[s'] Motion to Dismiss Plaintiff['s] Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivilous Lack of Standing (DOCKET NO. 34). Blume, on behalf of himself and Defendant entities, also filed Motion to Strike Answers (DOCKET NO. 37), seeking an order striking his own Answer to Complaint, arguing that he filed the answer because he was "scared time was running out" and he "lacked the financial resources to have adequate counsel." MEM. IN SUPPORT OF MOT. STRIKE, at 1, May 16, 2011.

On May 25, 2011, this Court issued Order on Motion to Withdraw and Order to Show Cause and Memorandum (DOCKET NO. 48), wherein this Court granted Dady & Gardner, P.A.'s Motion to Withdraw and directed Defendants to show cause as to why default judgment should not be entered against Blume Investments and Royal. This Court noted that business entities cannot be represented *pro se*; Blume is not an attorney; and therefore, Blume cannot represent Blume Investments or Royal in this matter. ORD. MOT. WITHDRAW & ORD. SHOW CAUSE & MEM., at 9, May 25, 2011.

---

[6] The Audubon and Johnston Agreements both contain provisions requiring the consent of ADQ for any such transfer. Blume contends that the transfer between Defendant entities and himself was permitted by IOWA CODE § 523H.5(12)(c), which states that transfers "within an existing ownership group of a franchise" "shall not be considered transfers requiring the consent of the franchisor under the franchise agreement." ADQ acknowledges that it remains to be seen whether these transfers were effective because of IOWA CODE § 523H.5(12). This issue will be discussed in § III.2.*i* of this Report and Recommendation.

Thereafter, on May 31, 2011, Blume, on behalf of himself and Defendant entities, filed a document entitled "Defendant Statement of Good Cause in Response to Court Order, Request Dismissal Based on Law, Stay Any Further Actions Until Order or Judgment is Granted to Protect Defendants Rights Under Due Process Defendants Rights Under the Constitution are Protected and Heard in a Fair Tribunal (Court)" (DOCKET NO. 49.)  On June 7, 2011, ADQ filed Plaintiff's Memorandum in Opposition to Defendant Blume's Motion to Dismiss Complaint (DOCKET NO. 50).  On June 10, 2011, Blume, on behalf of himself and Defendant entities, filed Request [for a] Fair Trial (DOCKET NO. 56). On June 24, 2011, Blume on behalf of himself and Defendant entities, filed a Request (DOCKET NO. 56), which was related to representation and denied by Order (DOCKET NO. 61) dated July 14, 2011.

On July 1, 2011, this Court issued an Order (DOCKET NO. 60), directing as follows:

> [T]he parties shall appear for a hearing before this Court, in Courtroom 3A of the Warren E. Burger Federal Building and U.S. Courthouse, 316 N. Robert Street, St. Paul, MN 55101, on Monday, August 22, 2011, at 9:30 a.m. C.S.T., on Defendants' Motion to Dismiss Plaintiffs Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (Docket No. 34); Defendants' Motion to Strike Answers (Docket No. 37); and Order to Show Cause (Docket No. 48).

*Id.*

On August 22, 2011, this Court held the noticed hearing, but there was no appearance by or on behalf of any of the Defendants.[7]  Since the hearing, there has neither been further communications with the Court from anyone purporting to be counsel for Defendants nor has the Court had any further communications from Blume.

## III.   ANALYSIS

### 1.   Order to Show Cause (DOCKET NO. 48)

As business entities, Blume Investments and Royal may not be represented *pro se*. *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02, 113 S. Ct. 716, 721 (1993).  Blume is not an attorney and, therefore, Blume cannot represent Blume Investments or Royal in this action.  Thus, all of the filings by Blume in this matter cannot be said to speak for Blume Investments and Royal.

"Defendant[s'] Statement of Good Cause in Response to Court Order" (DOCKET NO. 49) seems to raise arguments that Blume should be able to represent Defendant entities in this matter. [8]  *See generally* DOCKET NO. 49.  First, Blume seems to argue that Blume Investments and Royal hold no interest in the franchises.  Second, Blume seems to argue that either his or the Defendant entities' due process rights would be violated if he were not permitted to represent the entities.  Third, Blume seems to argue that he can

---

[7] On the morning of the hearing, this Court's chambers received a telephone call from Blume's attorney in Iowa who stated that Blume was in the custody of the Polk County Sheriff.  This is consistent with documents in *Blume v. American Dairy Queen, et al.*, 4:11-cv-178 RP/CFB (S. D. Iowa 2011).

[8] This Court prefaces each of Blume's arguments with the word "seems" because the arguments are extremely difficult to follow.

represent the Defendant entities because he has not been charged with the unlawful practice of law.   Fourth, Blume seems to argue that other franchise owners have represented their entities *pro se* and therefore, he should be able to represent the Defendant entities. Fifth, Blume seems to argue that this Court is prejudiced against him. Finally, Blume seems to argue that precluding him from representing the Defendant entities would expose him to liability in the absence of adjudication of the claims against Blume as an individual.[9]

If there is any contention that there is no merit to the claims against Blume Investments and Royal, then the Defendant entities must obtain counsel to raise that contention.   Neither Blume nor the Defendant entities can be said to be deprived of procedural due process of law because the Order, dated July 1, 2011, provided all Defendants with (1) notice that the entities were unrepresented and that default judgment would be entered against them in the absence of representation, and (2) an opportunity to be heard in writing and at a hearing.  *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 756 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").   Precluding Blume from representing Defendant entities in court does not deprive Blume of his property interest in the Defendant entities.   With respect to Blume's contention that other courts have permitted non-attorneys to represent

---

[9] In addition to those arguments set forth above, Blume argues within his Reply (DOCKET NO. 57) that attorney Erin Carr will be representing the Defendant entities. REPLY, at 2, June 17, 2011. This Court already addressed this issue within its Order (DOCKET NO. 61). There is no reason to stay entry of default based upon this argument.

entities,[10] the holdings of the United States Supreme Court unambiguously bar the practice. Blume's contention that this Court is prejudiced against him is unsubstantiated and without merit.

Many of Blume's arguments seem to be based upon a misunderstanding of ADQ's use of the term "alter ego." Entities, such as limited liability companies, cannot act by themselves; they need people to act on their behalf. People can also act on behalf of themselves. When ADQ uses the term "alter ego," ADQ is alleging that when Blume engaged in the activity within the Complaint he was acting on behalf of himself, on behalf of the Defendant entities, or both. This allegation neither empowers Blume—a *pro se* Defendant—to represent the Defendant entities in court; nor does it obviate ADQ's burden of proving its claims against Blume individually.

The record before the Court supports that Blume Investments and Royal were properly served. For the reasons set forth in the next section, this Court concludes that it has subject-matter jurisdiction over the claims against Defendant entities and personal jurisdiction over the Defendant entities. Blume Investments and Royal have failed to plead or otherwise defend. Furthermore, Blume, Blume Investments, and Royal failed to show cause as to why default should not be entered against Blume Investments and Royal. Nevertheless, the purported transfer of rights between Blume and the Defendant

---

[10] This Court notes that the two cases that Blume cites from this district in support of this argument involve dismissals with prejudice prior to any dispositive motion practice and prior to the pretrial conference. *See American Dairy Queen Corporation v. James Tate Enterprises, Inc.*, Civil No. 10-4756 PJS/FLN (D. Minn. 2010); *American Dairy Queen Corporation v. Health Kick Foods Too, Inc.*, Civil No. 03-878 PAM/RLE (D. Minn. 2003). Thus, in these cases it cannot be said that the franchise owners represented the defendant entities in any meaningful sense.

entities in May 2009 and the nature of the remaining claims against Blume warrant staying the entry of default *judgment* under Fed. R. Civ. P. 55(b) until adjudication of ADQ's claims against Blume is completed. ***See generally Johnson v. Dayton Elec. Mfg. Co.***, 140 F.3d 781 (8th Cir. 1998). Therefore, this Court recommends that the Clerk of Court be ordered to enter default against Blume Investments and Royal under Fed. R. Civ. P. 55(a).

### 2. Defendants' Motion to Dismiss Plaintiffs Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (DOCKET NO. 34)

Blume's memoranda of law are difficult to follow.[11] *See* DOCKET NOS. 35, 57. Blume appears to seek dismissal of the Complaint on six grounds. Blume argues this matter should be dismissed because (1) this Court lacks subject-matter jurisdiction; (2) this Court lacks personal jurisdiction over Defendants; (3) this matter should be dismissed for failure to join essential parties under Fed. R. Civ. P. 19; (4) the United States District Court for the District of Minnesota is an improper venue; (5) the Complaint should be dismissed and the parties ordered to arbitration; and (6) the Complaint should be dismissed because ADQ's claims are frivolous. For the reasons set forth below, this Court recommends that Blume's motion to dismiss be denied.

---

[11] Blume filed numerous documents in this matter without regard for the Local Rules. *See, e.g.* DOCKET NOS. 23-33. This Court designated Defendant[s'] Motion to Dismiss (DOCKET NO. 34) as the operative motion to dismiss in this matter. *See* DOCKET NO. 48. This Court asked ADQ to respond to Defendant[s'] Motion to Dismiss (DOCKET NO. 34). This Court has reviewed Docket Nos. 23 through 33, and concludes that they are consistent with the assertions made within Defendant[s'] Motion to Dismiss (DOCKET NO. 34); nevertheless, this Court has treated DOCKET NOS. 34, 35, and 36 as Defendants' motion papers.

### i. Application of the Iowa Code to the Agreement

Prior to reaching Blume's six contentions, this Court shall address all of Blume's arguments under the IOWA CODE. *See generally* DOCKET NO. 57. For the reasons set forth herein, the IOWA CODE does not warrant dismissal of this action.

Blume argues that this Court cannot exercise jurisdiction over him by virtue of IOWA CODE § 537A.10.3[12]:

> a. A provision in a franchise agreement restricting jurisdiction to a forum outside this state is void with respect to a claim otherwise enforceable under this section.
>
> b. A civil action or proceeding arising out of a franchise may be commenced wherever jurisdiction over the parties or subject matter exists, even if the agreement limits actions or proceedings to a designated jurisdiction.

IOWA CODE § 537A.10.3.a-.b; *see also id.* at § 537A.4 ("A condition, stipulation, or provision requiring a franchisee to waive compliance with or relieving a person of a duty or liability imposed by or a right provided by this section or a rule or order under this section is void."). The IOWA CODE provides for a claim premised upon a lack of good faith, IOWA CODE § 537A.10.11, and a claim seeking declaratory judgment that the agreement is terminated. *Id.* at § 537A.10.7. Therefore, Blume contends that ADQ's claims must be brought in Iowa pursuant to the § 537A.10.3.a. Blume is incorrect.

---

[12] The parties consistently cite to the wrong section of the IOWA CODE. Section 523H of the Iowa Code—upon which the parties rely—only applies to franchise agreements entered into prior to July 1, 2000. *See* IOWA CODE § 523H.2A. Thus, § 523H does not govern any of the Agreements at issue in the present case. The Agreements at issue are governed by § 537A.10. *Id.* The two franchise chapters are substantially similar. This Court has changed all of Blume's arguments to apply to the correct chapter.

Section 537A.10.3.a merely states that a forum selection clause shall not serve to bar a claim brought in Iowa under § 537A.10.  Section 537A.10.3.b encompasses the present case and does not bar ADQ's suit in this federal district court so long as this Court has subject-matter and personal jurisdiction over the claims and parties respectively.

Blume also argues that all rights under the Agreements were transferred to him, personally, in 2009, and therefore, all claims against the Defendant entities should be dismissed. Blume contends that this unilateral transfer is permitted by IOWA CODE §§ 537A.10.5 and 537A.10.5.j.  But, both sections require notice to the franchisor prior to the transfer and permit the franchisor to oppose the transfer if the transferee does not meet the franchisor's "reasonable current qualifications" for a franchisee. *Id.* ADQ contends it was unaware of the transfers until Blume raised the issue in connection with this litigation and there is a fact issue as to whether or not Blume would meet the "reasonable current qualifications" for a franchisee.  *Id.* This Court does not need to resolve this factual issue for the present motion.  This fact issue will be resolved at a later date and this Court recommends staying entry of default *judgment* on the basis of this unresolved factual issue.

Blume argues that the choice of law provision in IOWA CODE § 537A.10.14 bars application of other laws and bars this Court from considering ADQ's claims.  Section 537A.10.14 merely prohibits provisions "requiring the application of the law of another state in lieu of" § 537A, but § 537A.10.15 specifically states that IOWA CODE § 537A "does not limit any liability that may exist under another statute or at common law."

Finally, Blume argues that IOWA CODE § 616.7 mandates that the present action be transferred to the county in Iowa where the Agreements at issue were to be performed. Blume is incorrect. Section 616.7 concerns actions brought in an Iowa state court; § 616.17 has no bearing on this Court's jurisdiction.

## ii. *Rule 12(b)(1)*

Blume argues that this Court lacks subject-matter jurisdiction and, therefore, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1). For the reasons set forth below, this Court recommends that Blume's motion to dismiss for lack of subject-matter jurisdiction be denied.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Jurisdiction in the present case is asserted under 28 U.S.C. § 1332(a). COMPL. at ¶ 6. "Under the [28 U.S.C. § 1332(a)], district courts enjoy original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000." *MCC Mortg. LP v. Office Depot, Inc.*, 685 F. Supp. 2d 939, 942 (D. Minn. 2010).

> Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship. An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members. To determine jurisdiction, we look to the parties' status at the lawsuit's filing. Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship.

*OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citations omitted). "[A] corporation shall be deemed to be a citizen of any State by which it has

been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1).

In the present case, ADQ alleges that "the value of the damages ADQ seeks to recover and the value of the rights ADQ seeks to protect exceed $75,000." COMPL. at ¶ 6. Under § 1332 ADQ is a citizen of Delaware and Minnesota, Blume is a citizen of Iowa, and both Defendant limited liability companies are citizens of its Iowa member (or members). Therefore, this Court can exercise jurisdiction under 28 U.S.C. § 1332(a).

Blume also argues that ADQ lacks standing. "Federal court jurisdiction is defined and limited by Article III of the Constitution and is constitutionally restricted to 'cases' and 'controversies'." *Tarsney v. O'Keefe*, 225 F.3d 929, 934 (8th Cir. 2000) (quotation omitted); *see also United States v. Hays*, 515 U.S. 737, 742-43, 115 S. Ct. 2431, 2435 (1995) (stating the three elements that constitute "the irreducible constitutional minimum of standing"). The case-and-controversy requirement mandates that "judicial power exists only to redress or otherwise to protect against injury to the complaining party . . . . A federal court's jurisdiction therefore can be invoked only when the plaintiff [herself] has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146, 1148 (1973)); *see also Tarsney*, 225 F.3d at 934 (stating that "[a] case or controversy exists only if a plaintiff personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"). "If a plaintiff has not suffered an injury, there is no

standing and the court is without jurisdiction to consider the action." *Tarsney*, 225 F.3d at 934.

ADQ alleges that it suffered both actual and threatened injury as a result of the concrete and particularized actions by Blume and Defendant entities. A favorable decision in this matter for ADQ would prevent and redress the alleged injury. Therefore, this Court concludes that ADQ has standing to pursue its claims.

### iii.  Rule 12(b)(2)

Blume argues that this Court lacks personal jurisdiction over Blume and the Defendant entities and, therefore, this action should be dismissed under Fed. R. Civ. P. 12(b)(2).  For the reasons set forth below, this Court recommends that Blume's motion to dismiss for lack of personal jurisdiction be denied.

"To survive a motion to dismiss for lack of personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The court views the evidence in the light most favorable to the plaintiff and resolving all factual conflicts in the plaintiff's favor. *Id.* "Jurisdiction over a non-resident defendant must satisfy the requirements of the forum state's long-arm statute and of due process." *Id.*  "Because Minnesota's long-arm statute permits jurisdiction to the extent permitted by the Due Process Clause, the Court's inquiry is whether the exercise of personal jurisdiction comports with due process."  *SL Montevideo Technology, Inc. v. Eaton Aerospace, LLC*, No. Civ. 03–3302 (RHK/FLN), 2004 WL 415257, *1 (D. Minn. Mar. 2, 2004).

The principles of personal jurisdiction under the Due Process Clause are well established. Jurisdiction is appropriate only where a defendant has sufficient minimum contacts with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice. The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there. Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.

*Pecoraro*, 340 F.3d at 561-62.

This court applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance, and the last two are secondary factors.

*Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 -523

(8th Cir. 1996). Furthermore, the

third factor distinguishes whether the jurisdiction is specific or general. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose.

*Id.* at 523 n. 4.

ADQ makes three arguments to support its assertion that this Court can exercise personal jurisdiction over Defendants.  First, ADQ contends that this Court has specific

and general jurisdiction under the analysis anticipated by the standard of review.  Second, this Court can exercise personal jurisdiction under the *Calder* effects test. Finally, Blume consented to this Court exercising personal jurisdiction over him pursuant to the forum selection clauses in two the franchise Agreements. This Court will consider each argument.

ADQ contends that this Court has specific and general jurisdiction over Defendants by virtue of Defendants' contacts with ADQ in Minnesota.  ADQ alleges that the Defendants reached out beyond Iowa and negotiated with a Minnesota corporation for a franchise and the benefits that would derive from affiliation with a nationwide brand. The Agreements envisioned continuing and wide-ranging contacts between the Defendants and the Minnesota corporation.

The United States Supreme Court has rejected that the above-described form of contact with the forum state is random, fortuitous, or attenuated.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-480, 105 S. Ct. 2174, 2186 (1985). This Court notes that in addition to entering into the Agreements, Defendants made payments to ADQ, *see, e.g.*, DOCKET NO. 1-1, at Ex. D, DOCKET NO. 24, and Defendants frequently corresponded with ADQ. *See, e.g.*, DOCKET NO. 1-3, Ex. L., DOCKET NO. 24.  All of these payments and correspondence arise out of the franchisee-franchisor relationship and the parties to this action would have no dispute but for the fact that Defendants operated ADQ franchises.  ADQ has made a prima facie showing that Defendants have had "deliberate affiliation with the forum State"; it was reasonably foreseeable that Defendants would be involved in litigation in Minnesota; and the litigation results from Defendants' actions in

relation to ADQ. *Burger King Corp.*, 471 U.S. at 481, 105 S. Ct. at 2187. Furthermore, Minnesota has a legitimate interest in providing a forum for ADQ to litigate its claims. *Id.* at 482-83, 105 S. Ct. at 2187. And, as will be discussed later, Minnesota is a convenient forum for the parties to this action. *See Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 727 (8th Cir. 2001) (stating that an Iowa resident does not have a strong contention that Minnesota is an inconvenient forum).

ADQ contends that this Court can exercise jurisdiction over Defendants by virtue of the *Calder* effects test. The test annunciated in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984), "approved an 'effects' test that allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (quotation omitted). The *Calder* effects test is not distinct from the due-process analysis described earlier; rather, it is meant to distinguish "'mere untargeted negligence' and 'intentional, and allegedly tortious, actions' aimed expressly at the forum state." *Id.* at 1390 (quoting *Calder*, 465 U.S. at 789-90 104 S. Ct. at 1487).

In the present case, ADQ has alleged that the Defendants' committed two intentional torts: extortion and defamation. Both of these torts encompass the intent to harm ADQ and that harm would be suffered in Minnesota, ADQ's principal place of business. Thus, construing evidence in the light most favorable to ADQ, this Court can exercise personal jurisdiction over Defendants because Defendants must reasonably have anticipated being haled into court in Minnesota. *Id.*

Finally, ADQ contends that Blume and Blume Investments consented to personal jurisdiction in the Johnston Agreement and Blume consented to personal jurisdiction in the Grinnell Agreement. *See* DOCKET NOS. 1-1, 1-2.   Blume disputes that either Agreement is valid. For the reasons set forth below, this Court concludes that Blume consented to personal jurisdiction in Minnesota by virtue of the forum selection clauses.

"Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001).   Such forum selection clauses are enforceable unless they are "invalid or enforcement would be unreasonable and unjust."  *Dominium Austin Partners, L.L.C.*, 248 F.3d at 726.

> Since it may be assumed that parties consider the inconvenience of the forum at the time they enter a contract, it is incumbent on the party seeking to escape his contract to show that proceeding in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*Id.* at 727.

Blume contends that the Johnston Agreement was void because he crossed out his signature.  For the purposes of personal jurisdiction, this Court concludes that ADQ has made a prima facie showing that Blume consented to personal jurisdiction in the Johnston Agreement.  First, it is questionable whether or not Blume's signature has actually been crossed out. Second, Blume's purported copy of the Johnston Agreement with his signature more clearly crossed out is dated September 10, 2010, rather than September 10, 2008, the date that the Agreement was actually entered.  *See* DOCKET NO. 51. Finally,

Blume executed an Addendum to the Dairy Queen Operating Agreement and a Guaranty on the same date he purportedly signed and then repudiated the Johnston Agreement. *See* DOCKET NO. 1-1. There is no evidence that Blume repudiated the Addendum to the Dairy Queen Operating Agreement or the Guaranty. Thus, construing the evidence in the light most favorable to ADQ, this Court concludes that the Johnston Agreement was not repudiated by Blume, and Blume consented, both personally and on behalf of Blume Investments, to the jurisdiction of this Court.

Blume contends that he is not bound by the Grinnell Agreement because it expired pursuant to its terms. ADQ contends that even if the "Dairy Queen" Territory Agreement Food Service Addendum, dated February 1, 1997, expired, the underlying "Dairy Queen" Territory Agreement, dated August 30, 1966, still applies and binds Blume. This Court agrees. The "Assignment and Consent to Assignment" (DOCKET NO. 1-2, Ex. I) assigns to Blume all of the obligations under both the "Dairy Queen" Territory Agreement Food Service Addendum and the "Dairy Queen" Territory Agreement. It is the "Dairy Queen" Territory Agreement that contains the consent to this Court's jurisdiction. Given this fact and construing the evidence in the light most favorable to ADQ, Blume personally consented to the jurisdiction of this Court in the Grinnell Agreement.

Thus, for all of the reasons set forth above, this Court concludes that it has personal jurisdiction over the Defendants.

### iv.   Rule 19

Blume argues that this matter should be dismissed because ADQ has failed to join essential parties as required by Fed. R. Civ. P. 19. For the reasons set forth below, this

Court recommends that Blume's motion to dismiss for failure to join essential parties be denied.

Blume's motion comes under Fed. R. Civ. P. 19(a)(1)(A) because no individual "claims an interest relating to the subject matter of this action" under Fed. R. Civ. P. 19(a)(1)(B). Joinder is required under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Under Rule 19(a)(1), "[t]he focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *Gwartz v. Jefferson Memorial Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (quotation omitted). Whether a court could "accord complete relief" is determined by whether "[t]he district court could grant [the] relief [sought] without impairing the absent parties ability to protect their interests." *Henne v. Wright*, 904 F.2d 1208, 1212 n.4 (8th Cir. 1990).

Blume has identified the following individuals as essential parties: Pamela K. Blume, Chris Etten, ADQ's corporate attorney, Mark Klenklen, Jim Mcdonald (*sic*), other Dairy Queen franchisees located in Iowa, EE Sorenson, LLC, and Ed Sorenson, Blume's employees, ADQ's territory representative or operator, the Goodwin Law office, Lorna Lauridson, John Vergamini, Shelly O'Callaghan, Jim Mollender, William Killion, and Brent Kahler.

Blume contends that the above-named individuals are witnesses to various events relevant to this action and, therefore, are indispensable parties to this action under Fed. R. Civ. P. 19. Blume has not explained how these individuals have interests that need to be protected. Likewise, Blume has not explained how the absence of these individuals as

*parties* precludes the court from according complete relief among Blume, the Defendant entities, and ADQ. All of the claims of relief arise out of allegations of actions taken by Blume "on his own behalf and on behalf of his alter ego companies." COMPL. at ¶ 30. All of the relief sought arises out of these allegations. Thus, there is no apparent threat that adjudicating the dispute among the parties to this action and awarding relief will in any way impair any other individuals' ability to protect their interests.

### *v.  Rule 12(b)(3)*

Blume argues that the United States District Court for the District of Minnesota is the improper venue for the present action. For the reasons set forth below, this Court recommends that Blume's motion to dismiss for improper venue be denied.

"Under [28 U.S.C.] § 1391(a)(2), venue in diversity cases is proper in 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.' When a defendant seeks dismissal for improper venue under Rule 12(b)(3), it bears the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the parties' dispute." *Eagle's Flight of America, Inc. v. Play N Trade Franchise, Inc.*, Civ. No. 10-1208 (RHK/JSM), 2011 WL 31726, at *2 (D. Minn. 2011).

> *Forum non convenien*s exists as a method of allowing courts to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Trial courts have broad discretion in deciding a motion to dismiss based on *forum non conveniens*. The U.S. Supreme Court has outlined a number of private and public factors to be considered by the trial court in making its decision. The private factors to be considered include: the private interest of the litigant, relative ease of access to sources of proof, availability of compulsory process for attendance of the unwilling, the cost of obtaining witnesses,

the need to view the premises, the enforceability of a judgment, and "all other practical problems that make the trial of a case easy, expeditious, and inexpensive." The court must also consider public factors which include: the burden of jury duty on the local community, the local interest in having the matter decided at home, congestion in courts, and the difficulty in applying foreign law. The balance must be strongly in favor of the defendant in order to upset plaintiff's choice of forum.

*Grow Biz Intern., Inc. v. MNO, Inc.*, Civ. No. 01-1805 (DWF), 2002 WL 113849, at *4

(D. Minn. Jan 25, 2002) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct.

839, 843 (1947)).

Blume's argument in relation to venue is substantially similar to his argument

under Fed. R. Civ. P. 19.  Blume adds to this argument the contention that Minnesota is

inconvenient because he lives in Iowa and he cannot afford a Minnesota attorney.  For the

reasons already discussed in connection with personal jurisdiction and as to Fed. R. Civ.

P. 19, this Court concludes that Blume has not met his burden of showing that Minnesota

is not the proper venue for this action by virtue of its lack of a sufficient connection to the

parties' dispute.

Likewise, Blume has not met his burden of showing this is a *forum non*

*conveniens*. In the present case, Minnesota and Iowa are equally convenient forums under

the private factors.  For example, sources of proof can be found in either state.

Furthermore, compulsory process can be applied as to some witnesses and not others in

either state.  Likewise, the cost of obtaining witnesses would be equal in either state.

Furthermore, at this juncture in the case, there does not appear to be a need to view any

premises at issue.  Blume's contention that he cannot afford an attorney in Minnesota is

the only private factor that would favor Iowa; however, this is not a compelling argument because it appears that Blume cannot afford an attorney in either state to litigate his disputes with ADQ. Blume commenced the Iowa action on April 18, 2011, as a *pro se* litigant. *See generally Blume v. American Dairy Queen, et al.*, 4:11-cv-178 RP/CFB (S. D. Iowa, April 18, 2011). Thus, there is no basis to conclude that Minnesota is a *forum non conveniens*.

### vi.   Arbitration

Blume argues that the Audubon Agreement includes a mandatory arbitration provision for all disputes between ADQ and Blume Investments and, therefore, those claims arising out of the Audubon Agreement should be dismissed and the parties should be ordered to arbitration.  ADQ contends that Blume waived his right to arbitrate because he commenced an action in the United States District Court for the Southern District of Iowa premised on the Audobon agreement.  For the reasons set forth below, this Court recommends that Blume's motion to compel arbitration for the claims arising out of the Audubon Agreement be denied.

Courts within the Eighth Circuit

> apply a uniform three-factor test in determining whether a party has waived its right to arbitration, finding waiver when the party seeking arbitration (1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions.

*Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011). As to the second factor, "[a] party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Id.* at

1118 (quotation omitted).   As to the third factor, "[w]hether inconsistent actions constitute prejudice is determined on a case-by-case basis." *Id.* at 1119 (quotation omitted).

On April 15, 2011, Blume asserted that there is an arbitration provision in the Audubon Agreement in his Answer to Complaint. Three days later, on April 18, 2011, Blume, on behalf of himself and Defendant entities, commenced an action against ADQ and other defendants in the United States District Court for the District of Iowa. *See Guy Blume v. American Dairy Queen, et al.*, 4:11-cv-178 RP/CFB (S. D. Iowa, Compl. filed April 18, 2011). The action in Iowa is premised in part on the Audubon Agreement. To date Blume has filed four complaints in that action.  *Id.* at DOCKET NOS. 1, 3, 7, 11. Blume's actions compelled ADQ to file three motions to dismiss, stay, or transfer. *Id.* at DOCKET NOS. 9, 20, 41. Thus, Blume was clearly aware of the arbitration provision on April 15, 2011; in spite of the arbitration provision, Blume substantially invoked the "litigation machinery" by commencing the Iowa action based in part on the Audubon Agreement; and Blume inconvenienced ADQ by compelling ADQ to incur the costs of securing representation in Iowa and forced ADQ to incur the cost of filing three motions to dismiss, stay, or transfer.   All of these actions are inconsistent Blume's asserted interest in arbitration. Therefore, this Court concludes that Blume waived his right to arbitration under the Audubon Agreement.

### vii.  Frivolous Claims

Blume's Memorandum of Law in support of his motion to dismiss includes the following heading "Plaintiff[']s claims of extortion, defamation, and good faith dealings,

and right to terminate franchise agreements are all frivolous." PL.'S MEM. at 23 (DOCKET NO. 35). This Court recommends that Blume's motion to dismiss based upon contentions that ADQ's claims are frivolous be denied.

ADQ interpreted this section as a challenge to ADQ's standing to bring claims against Blume. This interpretation is not without merit given that Blume entitled his motion to dismiss, "Defendants' Motion to Dismiss Plaintiff[']s Complaint for . . . Frivolous Lack of *Standing*." *See* DOCKET NO. 34 (emphasis added).   Nevertheless, reading Blume's memoranda generally and the section entitled "Plaintiff[']s claims of extortion, defamation, and good faith dealings, and right to terminate franchise agreements are all frivolous," *id.*,   in particular, it is clear that Blume has neither challenged ADQ's standing (beyond what was discuss *supra* § III.2.*ii*) nor ADQ's ability to state a claim upon which relief can be granted. Rather, Blume simply disputes ADQ's factual allegations and seems to be raising separate claims against ADQ under breach of contract theories, Racketeer Influenced and Corrupt Organizations Act, and rules of professional conduct for attorneys.[13]   In the absence of any particularized argument, this Court concludes that ADQ's Complaint is not frivolous and recommends that Blume's motion be denied.

---

[13] Blume seems to also raise new issues in his Reply memorandum.  This practice is strictly prohibited. D. Minn. LR 7.1(b)(3).  *Pro se* litigants must comply with court rules.  *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). Therefore, this Court has not addressed those arguments in this Report and Recommendation.

### 3.  Defendants' Motion to Strike Answers (DOCKET NO. 37)

Blume seeks an order striking his Answer to Complaint.  ADQ does not oppose the motion.  If the recommendation to deny Blume's motion to dismiss is adopted, then striking Blume's Answer to Complaint would likely result in an entry of default judgment against him under Fed. R. Civ. P. 55 for failure to defend. This outcome would preclude Blume from engaging in discovery, presenting any defenses, filing a motion for summary judgment, or defending himself at trial.  Simply, this outcome would be inconsistent with Blume's stated refutation of the allegations against him.

It would also be inconsistent with Fed. R. Civ. P. 1 for this Court to recommend striking Blume's Answer to Complaint at this juncture. If the recommendation to deny Blume's motion to dismiss is adopted, this Court will conduct a conference under Fed. R. Civ. P. 16.  At that conference, the parties can discuss the deadline for amending the pleadings.  If, after the conference under Fed. R. Civ. P. 16, Blume maintains that he wants his own Answer to Complaint stricken then Blume may re-file his motion to strike.

Therefore, for the reasons set forth herein, this Court recommend that Blume's Motion to Strike Answer be denied without prejudice.

[The remainder of this page has been left blank.]

## IV.    RECOMMENDATION

Based upon the record, memoranda, and oral arguments, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss Plaintiffs Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (DOCKET NO. 34) be **DENIED**.

2.    Defendants' Motion to Strike Answers (DOCKET NO. 37) be **DENIED WITHOUT PREJUDICE**.

3.    Pursuant to the Order to Show Cause (DOCKET NO. 48), the Clerk of Court be directed to **ENTER DEFAULT** against Defendants Blume Investments, LLC and Royal Professional Solutions, LLC under Fed. R. Civ. P. 55(a).


Dated: December 2, 2011

_____*s/ Tony N. Leung*_____
Magistrate Judge Tony N. Leung
United States District Court

CIVIL NO. 11-358 (RHK/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly

appealable to the Circuit Court of Appeals.   Written objections must be filed with the

Court before **<u>December 19, 2011</u>**.