UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| AMERICAN DAIRY QUEEN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GUY A. BLUME, BLUME INVESTMENTS, LLC, and ROYAL PROFESSIONAL SOLUTIONS, LLC,<br><br>Defendants. | CIVIL NO. 11-358 (RHK/TNL)<br><br>REPORT & RECOMMENDATION |

William L. Killion, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh, Suite 2200, Minneapolis, MN 55402, for Plaintiff; and

Guy A. Blume, 4309 Northwest Fifth Street, Ankeny, IA 50023, pro se Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on this Court's (1) Order to Show Cause & Case Management Order (Docket No. 102) (hereinafter "Order to Show Cause I") and (2) Second Order to Show Cause (Docket No. 113) (hereinafter "Order to Show Cause II"). A hearing was held on the orders to show cause on April 17, 2012. William F. Killion appeared on behalf of Plaintiff American Dairy Queen Corporation (Plaintiff). Defendant Guy A. Blume (Defendant) appeared pro se. For the reasons set forth herein, this Court concludes that Defendant has violated

court orders and Federal Rule of Civil Procedure 11. Therefore, this Court recommends that Defendant Guy A. Blume be ordered, pursuant to 28 U.S.C. § 636(e), to appear before the district court judge upon a day certain to show cause why he should not be adjudge in contempt and in violation of Fed. R. Civ. P. 11 by reasons of the facts certified herein.

## I.

Based upon the file and documents contained therein, along with the arguments and exhibits presented at hearing, the undersigned magistrate judge certifies the following:

### FINDINGS

**A.     Prior Orders**

On July 14, 2011, this Court issued an Order (Docket No. 61) finding that Defendant's telephone call to chambers and a written submission were inappropriate. This Court apprised Defendant that "[*p*]*ro se* litigants are 'not excused from complying with substantive and procedural law.'"  Order at 1-2, July 14, 2011 (quoting *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986)).  This Court ordered, in part, as follows:

> Defendant Guy A. Blume shall stop contacting chambers by telephone and shall not contact chambers by e-mail or facsimile. Defendant Guy A. Blume shall write and file with the Clerk of Court any inquires for this Court. If Defendant Guy A. Blume files a motion in this matter, it shall conform with all applicable laws and rules, including the Local Rules for the United States District Court for the District of Minnesota, except that he shall accompany the motion and the motion's supporting papers with a Notice of Hearing,

> stating that the hearing date and time is to be determined by the Court.

*Id.* Defendant was also warned that failure to comply with court orders "shall subject the non-complying party . . . to any and all appropriate remedies, sanctions, and the like." *Id.*

On December 29, 2011, this Court issued a Case Management Order (Docket No. 71) finding that "[Defendant] . . . failed to comply with both the procedural rules and a court order" by calling chambers twice and bringing an improper motion for reconsideration on this Court's Report and Recommendation (Docket No. 63). This Court cited all of the language from the July 14, 2011 Order that is quoted above and warned Defendant that (1) a court may sanction a litigant for failure to comply with court orders, *id.* at 2 (citing *Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005)); (2) "the Order, dated July 14, 2011, still stands," *id.* at 3; and (3) failure to comply with orders of this Court "shall subject the non-complying party . . . to any and all appropriate remedies, sanctions, and the like." *Id.* at 3.

On January 24, 2012, this Court issued a second Case Management Order (Docket No. 86). This Court noted that Defendant had noticed a hearing before the Honorable Richard H. Kyle, United States District Court Judge for the District of Minnesota, in violation of the July 14, 2011 Order. This Court again quoted the July 14, 2011 Order and stated:

> This instruction is unambiguous: [Defendant] is not to schedule or notice hearings. This is the second time that Defendant [] has failed to comply with an Order of this Court. See Docket No. 84. This second violation also constitutes Defendant[]'s last warning that failure to comply with any Order of this Court shall subject him—the non-complying

> party—to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Order, at 2, Jan. 24, 2012.

### B. Order to Show Cause I (Docket No. 102)

On March 12, 2012, this Court issued Order to Show Cause I. Order to Show Cause I and all of its attachments are incorporated herein by reference. The following constitutes the factual recitations within Order to Show Cause I:

> On February 29, 2012, at 12:02 p.m., Plaintiff American Dairy Queen Corporation's (ADQ) counsel sent chambers an e-mail entitled, "Proposed Order Granting ADQ's Motion to Amend Complaint – ADQ v. Blume (Case No. 11-cv-358 RHK/TNL)." . . . This e-mail was also sent to guyblume@*******.com. . . . At 11:53 a.m. earlier that same day, Plaintiff's counsel electronically filed the following documents: Motion of American Dairy Queen Corporation to Amend Complaint (Docket No. 92); Brief In Support of Motion of American Dairy Queen Corporation (ADQ) to Amend Complaint (Docket No. 93); and Certificate of Service (Docket No. 94). The e-mail, thus, complied with D. Minn. LR 7.1 and the ELECTRONIC CASE FILING PROCEDURE GUIDE: CIVIL CASES, at II.G (Oct. 2011), *available at http://www.mnd.uscourts.gov/cmecf/reference_guides.shtml*.
>
> At 12:11 p.m., Defendant . . . sent a responsive e-mail to chambers. . . . The e-mail in its entirety states:
>
>> I am not allowed to e-mail the court but ADQ is. I do not agree with this amendment ADQ could of used the court to terminate franchises and now after stealing and destroying lives they

> want to amend to cover up crimes. It is a year later, I have said it before this cover in Minnesota stinks of inpropriety. I will not stipulate to the amendment. This is like going out and committing a crime and then going to the Court and asking them if it is okay. WTF Man

. . . ([A]ll errors are from the original). The Court takes judicial notice that "WTF" is an acronym for a profane expression of "incredulity or annoyance." OXFORD ENGLISH DICTIONARY, *Draft Additions "WTF"* (March 2009), *available at* www.oed.com.

At 12:51 p.m., Defendant . . . sent a second e-mail to chambers. . . . The e-mail in its entirety states:

> Mr. Killion has admitted to his client illegally collecting fees he has already said he knew the Judges in Minnesota and would be able to do what he wants. The appeal has not been removed and these actions are to cover up crimes and it is ADQ who filed the lawsuit and it is ADQ who has cheated people for over 50 years. It is ADQ who has hid behind a court of friends. ADQ can only win its case in a court that restricts witnesses and parties. Produce the documents they requested in Iowa. Now all the sudden ADQ is not a public figure this is a joke and cover up in Minnesotat.

> Guy

Order to Show Cause I, at 1-3, Mar. 12, 2012 (all errors are from the original).

Based upon the above facts, this Court concluded that "his two e-mails to chambers appear to be knowing violations of this Court's Order." *Id.* at 3. This Court also noted that "within these e-mails to the Court, [Defendant] uses a profane acronym and baselessly accuses the Court of unlawfully conspiring with Plaintiff and Plaintiff's

counsel." *Id.* at 3. This Court also noted that within the Orders issued on December 29, 2011, and January 24, 2012, Defendant was warned of the possibility of sanctions for further violations of orders.[1] Based upon these conclusions, this Court ordered Defendant to appear and show cause as to (1) why he should not be held in contempt for his repeated violations of this Court's Orders, and (2) why he should not be sanctioned accordingly. Defendant was ordered to file any documents in support of his show of cause on or before April 2, 2012.

Defendant, thereafter, filed a Motion for Recusal (Docket No. 104) and Memorandum of Law (Docket No. 105). In his Memorandum of Law, Defendant acknowledged his error in contacting chambers. He stated: "I want to apologize to Judge Leung for replying to an e-mail from Faegre Benson for filing to amend pleadings after the court held my motion from being filed." Pl.'s Mem. of Law, at 7, Mar. 15, 2012; *see also id.* at 13. Defendant also seems to contend that his behavior was justified or mitigated because (1) the Court and Defendant's counsel conspired to "entrap" or provoke him into responding by e-mail, *id.* at 7-9; *see also* Pl.'s Mem of Law, at 7, Apr. 2, 2012 (Docket No. 108); (2) Defendant had to contact chambers because the Court is "concealing his filings" or not docketing his filings,[2] Pl.'s Mem. of Law, at 7-9, 12, Mar.

---

[1] This Court also noted that based upon the docket in *Guy A. Blume v. American Dairy Queen, et al.*, 4:11-cv-178 (S.D. Iowa), "Defendant[]'s actions in the present case appear to be part of a larger pattern of callous disregard for the judicial process." Order to Show Cause I, at 4.

[2] This allegation is repeated throughout Defendant's filings. *See, e.g.*, Letter, Apr. 6, 2012 (Docket No. 111) ("I am working on bringing forward information that a lot of filings were mailed to the Court and not entered. I will present the tracking numbers and dates and mail to the Court next week.").

15, 2012; (3) Plaintiff has not responded to Defendant's discovery requests, *id.* at 9; (4) Defendant's brother passed away, *id.* at 10; and (5) Defendant has difficulty with writing, using computers, and fine motor skills. *Id.* at 12.

This Court reviewed Defendant's filings between March 12, 2012, and April 10, 2012. *See* Docket Nos. 108, 109, 111, 112. This Court does not construe any of these submissions to be responsive to Order to Show Cause I.

### C. Order to Show Cause II (Docket No. 113)

On April 10, 2012, this Court issued Order to Show Cause II. Order to Show Cause II is incorporated herein by reference. The following constitutes the relevant factual recitations within the Order to Show Cause II:

> 6. Defendant Guy A. Blume's Motion to Reconsider (Docket No. 110) seems to request that the Court (1) reconsider prior arguments, (2) transfer the case to a federal court in Iowa because "defendants life has been threatened he does not feel safe traveling to Minnesota"; (3) excuse him from appearing at the hearing scheduled for April 17, 2012, because the forum "telegraph[s] his travel" and "his life has been threatened" (Docket No. 112).
>
> . . . .
>
> 12. Defendant Guy A. Blume has repeatedly alleged, in signed and written submissions to this Court, that his life has been threatened, as follows:
>
> a. "These business practices seem common in the Dairy Queen system. Since the filing I have receive anonymous threats stating 'if I don't quit Fucking around with people's livelihoods and ability to collect Franchise Fees I could end up in a ditch'." Docket No. 31, at 2 of 20.

b. "I did not feel comfortable or safe accepting any offer that kept me in this threatening Dairy Queen environment." Docket No. 31, at 3 of 20.

c. "I was threatened by ADQ territory representative who repeatedly levied verbal accusations at me stating, 'He's a crazy M-fer and going to kill someone' followed by the ADQ representative threatening to punch me in the face." Docket No. 31, at 7 of 20.

d. "The Representative Ed Sorenson 'territory operator' has went as far as to threaten to kill someone.'" Docket No. 31, at 12 of 20.

e. "They have threatened Defendants life." Docket No. 35, at 1 of 27.

f. "Defendants AFFIRMATIVELY STATES PLAINTIFF has made threats anonymously to cause physical harm if he did not keep quiet. The threat stated 'if I don't quit Fucking around with people's livelihoods and ability to collect Franchise Fees I could end up in a ditch". Plaintiff took this as he would end up dead." Docket No. 35, at 25 of 27.

g. "With all due respect this feels like a John Grisham horror Story where the Defendants life has been threatened." Docket No. 49, at 12 of 22.

h. "[B]ecause of fear for my safety I would prefer not to have a hearing telegraphing my travel to this Venue . . . ." Docket No. 67, at 11 of 11.

i. "Furthermore Blume has received death threats and would request protection to and from any hearing in Minnesota . . . ." Docket No. 80, at 2 of 3.

j. "Moreover the Defendants life has been threatened by ADQ and its affiliates over unearthing the illegal collection of Fees." Docket No. 81.

>
> k. "Blume has been told to shut up and his life has been threatened over collecting royalties . . . ." Docket No. 96, at 53 of 55.
>
> l. "Sorenson was so violent because of the question of fees he was threatening kids saying he was a crazy mfer and going to kill someone." Docket No. 108, at 2 of 7.
>
> m. "I have personal knowledge I have been told to shut up about the fees in the Dairy Queen system and my life has been threatened on numerous occasions by defending myself against egregious actions." Docket No. 109, at 2 of 5.
>
> n. "Blumes life has been threatened . . . ." Docket No. 111, at 2 of 2.
>
> o. "The abuse has been untenable and Defendant Blume is being put into a position of Jeopardy by being forced to litigate in a forum telegraphing his travel after his life has been threatened and he moved his family." Docket No. 112, at 1 of 1.

Order to Show Cause II, at ¶ 12 (all errors are from the original source). This Court noted that *pro se* litigants are obligated to comply with substantive and procedural law, and Fed. R. Civ. P. 11(b)(3) precludes a party from presenting to the Court any paper with factual contentions that have no evidentiary support. *Id.* at ¶¶ 10-11. This Court stated:

> While this Court takes threats of physical violence within the context of litigation extremely seriously, Defendant[]'s allegations of threats on his life are vague, lacking details and supporting evidence, and are of dubious credibility given that they are cited in support of motions to dismiss and transfer venue, and the threats are not cited in support of any motion seeking protection, sanctions, or a finding of contempt.

*Id.* at ¶ 12. Therefore, this Court ordered Defendant to appear, in person, and show cause why the enumerated quoted statements (i.e., Paragraphs 6 and 12.a-12.o) have not

violated Federal Rule of Civil Procedure 11(b)(3).  This Court ordered Plaintiff to file and serve all evidence in its possession that is relevant to the Order to Show Cause II.  This Court ordered Defendant to file any evidence, exhibits and written arguments in support of his show of cause by April 16, 2012.

Plaintiff filed the Declaration of Killion in Support of Plaintiff's Brief Responding to the Court's Request for Relevant Evidence and Exhibits (Docket No. 115).  Killion avers that Plaintiff investigated Defendant's claims that his life has been threatened and found no information to support the claims.  Decl. Killion, at ¶ 7, Apr. 13, 2012.  Killion further avers that Edward Sorenson is a "territory operator" licensed by Plaintiff to "operate, and license others to operate, DAIRY QUEEN® stores in certain counties in Iowa." *Id.* at ¶ 3.  Sorenson issued two subfranchise agreements to Defendant to operate two different DAIRY QUEEN® restaurants, in Huxley and Ames, Iowa.  *Id.* at ¶ 5.  Killion further avers that Defendant made similar reports of threats on his life to Killion during their correspondence and conversations.  *Id.* at ¶¶ 8-9.  Killion also cited an Order issued by the Honorable Robert W. Pratt, Chief United States District Court Judge for the Southern District of Iowa, in *Guy A. Blume v. Edward E. Sorenson & EE Sorenson LLC*, 4:11-cv-222 (S.D. Iowa, June 7, 2011).  In that Order, Judge Pratt noted that:

> Plaintiff also alleges that he has "received anonymous death threats stating I should keep my mouth shut and if I don't I will pay." Pl.'s 1st Mot. at 1; *see also* Pl.'s 1st Br. At 1-2 ("[My] life has been anonymously threatened on 5 or more occasions."); id. at 4 ("My life is eminent [sic] Danger if restraint is not taken."). *Plaintiff, however, has provided no evidence linking any alleged threats to the Defendants*, nor has Plaintiff made any effort to explain how such threats have

>anything to do with the termination of agreements between the parties.

*Id.* at n.8 (emphasis added).

### D.  Hearing on Orders to Show Cause

On April 17, 2012, a hearing was held on both Orders to Show Cause, and other motions. At the hearing on the Orders to Show Cause, Defendant acknowledged that he had failed to comply with the July 14, 2011 Order regarding contacting chambers and attributed those errors to the stress of litigating this case *pro se*. Defendant also stated that he received the second Order to Show Cause (Docket No. 113) with too short of notice to comply with its provisions; however, Defendant averred that there were numerous documents, including police reports, that would corroborate his statements.

At the hearing, the Court received Court Exhibit 1, containing (1) an Agreement, (2) an Assignment, (3) a Noise Nuisance/Trespass Notice, (4) an Ames Police Department Incident Report from March 31, 2010, (5) an e-mail from Defendant, and (6) an Affidavit of Levi Beckner from the *Blume v. American Dairy Queen*, 4:2011cv178 (S. D. Iowa).[3] Court Exhibit 1 has been separately filed on the docket.

First, the Agreement and Assignment have no apparent relevance to the Order to Show Cause II. Second, Beckner's Affidavit avers that Sorenson took signs from "the Huxley Dairy Queen."

---

[3] The Noise Nuisance/Trespass Notice is from Docket Nos. 3 and 17 in *Blume v. American Dairy Queen*, 4:2011cv178 (S.D. Iowa). The Affidavit is from Docket No. 78 in *Blume v. American Dairy Queen*, 4:2011cv178 (S.D. Iowa).

Third, the Noise Nuisance/Trespass Notice is directed to Edward E. Sorenson and Defendant is the complainant. The Notice states that Sorenson was not to trespass at an address in Ames, Iowa. The Notice expired on March 31, 2011.

Fourth, The Incident Report narrative states that Defendant reported that he had not paid his ADQ franchise fee and Sorenson, "the district/area supervisor for Dairy Queen has been harassing him & his employees." The narrative further states that Sorenson took some signs that belonged to Defendant. The narrative further states that both Defendant and Sorenson were served with no trespass orders for their respective businesses.

Finally, the e-mail concerns numerous topics, but states in relevant part,

> I will ask that under the circumstances Ed not Enter the stores without Lorna or another manger he has went around talking about conspiracy saying he is a crazy MFer and he is going to injury people. I hope Ed is just misguided right now but there are witnesses to this . . .
>
>     . . . .
>
> The DQ brand and integrity is in jeopardy when Mr. Sorrenson goes around saying things On December 17th "I'm a crazy Mfer" that John . . . is a piece of shit I'm going to get that mfer" quote[4]

On May 9, 2012, following the hearing, this Court ordered, among other things, as follows:

> At the hearing on April 17, 2012, Blume stated that he did not have time to comply fully with the Second Order to Show Cause (Docket No. 113). On or before June 5, 2012, Blume

---

[4] All errors are from the original.

> shall file all documents that he wants as part of the record for the Second Order to Show Cause (Docket No. 113).

Order ¶ 5, May 9, 2012 (Docket No. 121). Between May 16 and July 27, 2012, Defendant filed numerous documents, *see* Docket No. 126, 137, 138, 139, 141, 142, 143, 144, that are not responsive to that section of the May 9, 2012 Order that is quoted above.

### E. August 3, 2012 Hearing

On August 3, 2012, this Court held a hearing on numerous motions. Killion appeared on behalf of Plaintiffs. Defendant appeared *pro se*. At the hearing, Defendant again stated on the record that his life had been threatened. This Court asked Defendant to elaborate on the nature of these threats. Defendant stated that his life had been threatened during two telephone calls that he received in July 2011. Defendant stated he did not know who threatened his life, but he knew the threats were related to Plaintiff. These statements on the record are inconsistent with Defendant's submissions to the Court.

### F. Defendant's Credibility

This Court finds Defendant not credible as follows: First, despite multiple opportunities to do so Defendant has provided no evidence to support his statements that his life has been threatened. Second, Defendant's statements at issue for the present Report and Recommendation are part of broader pattern of behavior of making unsupported statements. For example, Defendant has repeatedly asserted that the Court or the Clerk of Court is not docketing his filings. Defendant has repeatedly stated that he

will soon provide "smoking gun" evidence of this alleged malfeasance. To date, Defendant has not provided a single copy of a document that he asserts was sent to the Court but not filed. Moreover, Defendant's numerous filings in this matter belie any claim that the Court or Clerk of Court is not docketing his submissions. Third, Defendant's statements are all vague and lacking any specificity that could provide them with inherent credibility. Fourth, Defendant's statements and actions in the present case are consistent with his conduct in his Iowa litigation. Finally, it is evident from the record that Defendant has a personal vendetta against anyone associated with Plaintiff. Defendant's statements at issue in the present case are calculated to harm the reputation of Plaintiff and color the Court's perception of Plaintiff.

## II.

Based upon the foregoing Findings, the undersigned magistrate judge makes the following:

### CONCLUSIONS OF LAW

**A.     Violation of Court Orders**

"[C]ontempt orders must be based upon a party's failure to comply with a clear and specific underlying order, and that the contempt order must specifically identify those actions necessary to bring a contemnor into compliance." *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002) (citing *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74–75 (1967)).

As the record reflects, Defendant had notice, beginning on July 14, 2011, that he was not permitted to contact chambers by any means other than the public docket. This Order was clear and unambiguous. Assuming *arguendo* that the July 14, 2011 Order was ambiguous on July 14, 2011 (and it was not), the Order was interpreted for Defendant on January 24, 2012, and Defendant was twice warned that his actions violated the July 14, 2011 Order. In the July 14, 2011 Order and after Defendant's violations of said Order, Defendant was warned that future violations would result in sanctions. Moreover, Defendant has been warned in numerous orders—Docket Nos. 48, 61, 71, 86, 102, 103, 113, 118, 121, 128, and 140—that he would face "any and all appropriate remedies, sanctions and the like" if he violated any order.

Within the Order to Show Cause I, Defendant was asked to show cause as to why he should not be sanctioned for violating the July 14, 2011 Order. In response, Defendant admitted both in a written submission and on the record at the hearing to violating the July 14, 2011 Order. Defendant's statements of justification or mitigation do not constitute a reasonable excuse for disregarding the Court's mandate.

For all these reasons, this Court concludes that Defendant is in contempt for violating the July 14, 2011 Order and all subsequent orders that incorporated and referred to the July 14, 2011 Order.

### B.   Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 requires that every paper submitted to the court be signed.

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an . . . unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." *Id.* at 11(c)(1).

In the present case, Order to Show Cause II identified 17 statements by Defendant that were presented to the Court and for which the Court has grave concerns were without any evidentiary support. This Court ordered Defendant to appear in person before the Court and show cause why these 17 statements have not violated Fed. R. Civ. P. 11(b)(3). Defendant was also provided with two opportunities to submit evidence to support his show of cause.

This Court has reviewed Court Exhibit 1—which was Defendant's only substantive response to Order to Show Cause II—and concludes that these documents do not support that Defendant had a reasonable basis for believing the 17 statements identified in Order to Show Cause II have evidentiary support. First, even under the most expansive reading of Exhibit 1, these documents do not provide any evidentiary support

that Sorenson ever threatened to harm anyone. Trespassing and taking signage are distinct acts from threatening physically to harm people. Second, there is no evidentiary support that Sorenson was acting with or on behalf of Defendant. Thus, for example, Exhibit 1 does not provide evidentiary support for the quote identified in the Order to Show Cause II at subparagraph 12.f, which can only be construed as an allegation that *only* Plaintiff threatened Defendant's life. Many of the other statements when taken in context are also meant to be construed as an assertion that Plaintiff—not a territory operator—threatened Defendant's life. Again, Defendant's general conduct and bald assertions in this case are strikingly reminiscent of the conduct and assertions rejected by Judge Pratt.

Independent of Exhibit 1, this Court concludes that the 17 statements are without evidentiary support because this Court does not find Defendant to be credible. In addition to the reasons set forth above, it appears from the record that, since at least May 2011, Defendant alleged to this Court, Judge Pratt, and Plaintiff's counsel that there have been threats upon his life. Defendant has never provided any evidence to support his assertions.

For all these reasons, this Court concludes that Defendant has violated Fed. R. Civ. P. 11(b)(3).

## III.

Based on the foregoing Findings and Conclusions, the undersigned magistrate judge enters the following:

### ORDER

For the reasons set forth herein, **IT IS HEREBY RECOMMENDED** that Defendant Guy A. Blume be ordered to appear before the district court judge upon a day certain to show cause why he should not be adjudge in contempt and in violation of Federal Rule of Civil Procedure 11 by reasons of the facts certified herein.


Dated: August 6, 2012

        *s/ Tony N. Leung*
Magistrate Judge Tony N. Leung
United States District Court

CIVIL NO. 11-358 (RHK/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **August 21, 2012**.