UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 11-358 (RHK/TNL)

AMERICAN DAIRY QUEEN
CORPORATION,

**REPORT & RECOMMENDATION**

     Plaintiff,

v.

GUY A. BLUME, BLUME
INVESTMENTS, LLC, and ROYAL
PROFESSIONAL SOLUTIONS, LLC,

     Defendants.

---

  William L. Killion, **FAEGRE BAKER DANIELS, LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN, for Plaintiff.

  Guy A. Blume, 117 South 7th Avenue, Wausau, WI, *pro se*.

## I. INTRODUCTION

  This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff American Dairy Queen's ("ADQ") Motion to Quash Various Submissions by Defendant Guy A. Blume ("Blume") and Motion for Sanctions (Docket No. 219). The Court held a hearing on ADQ's Motions on October 22, 2012. William F. Killion appeared on behalf of ADQ, and Blume appeared *pro se*. For the reasons set forth herein, this Court recommends that ADQ's Motion be granted.

## II. FINDINGS

### A. The Litigation's Beginning

Plaintiff ADQ commenced this action on February 11, 2011, asserting claims for declaratory relief, injunctive relief, and damages against Blume and his "alter ego limited liability companies," Defendant Blume Investments, LLC and Defendant Royal Professional Solutions, LLC. (*See generally* Compl., Docket No. 1.)[1] ADQ alleged that Defendants violated restaurant franchise agreements by failing to submit monthly sales reports to ADQ; failing to pay to ADQ a percentage of gross retail sales from restaurants; failing to pay to ADQ an ongoing royalty of specified cents-per-gallon of soft-serve mix sold at their restaurants; and failing to satisfy other ancillary fee obligations. (*Id.* ¶¶ 11-29.) ADQ further alleged that Blume defamed and attempted to extort ADQ. (*See id.* ¶¶ 30-46.)

Early in this litigation, Blume contacted the chambers of this Court by telephone, requesting that an order be issued on several requests. *See* Order, July 14, 2011 (Docket No. 61), at 1. On July 14, 2011, Blume was ordered as follows:

> Defendant Guy A. Blume shall stop contacting chambers by telephone and shall not contact chambers by e-mail or facsimile. Defendant Guy A. Blume shall write and file with the Clerk of Court any inquiries for this Court. If Defendant Guy A. Blume files a motion in this matter, it shall conform with all applicable laws and rules, including the Local Rules for the United States District Court for the District of Minnesota, except that he shall accompany the motion and the motion's supporting papers with a Notice of Hearing,

---

[1] Pursuant to Judge Kyle's January 11, 2012 Order denying Blume's Motion to Dismiss (Docket No. 76), the Clerk of Court entered default against Defendants Blume Investments LLC and Royal Professional Solutions, LLC, on January 13, 2012. (Docket No. 79.)

2

> stating that the hearing date and time is to be determined by the Court. Thereafter, this Court shall set a hearing date and time on all future motions of Guy A. Blume.

*Id.* at 3. Blume was also warned that failure to comply with Orders of this Court "shall subject the non-complying party . . . to any and all appropriate remedies, sanctions, and the like." *Id.*

On December 2, 2011, this Court issued a Report and Recommendation (Docket No. 63) on Blume's Motion to Dismiss Plaintiff[']s Complaint for Lack of Subject Matter, Lack of Jurisdiction and Improper Venue and Dismiss Case as Frivolous Lack of Standing (Docket No. 34); Defendant's Motion to Strike Answers (Docket No. 37); and Order to Show Cause (Docket No. 48). Thereafter, Blume called chambers directly to receive a hearing date and filed "Objections to Report and Recommendation also 12(b)(6) Motion Memorandum of Law" (Docket No. 67), as well as "Blume's Motion Objecting to the Court's Report & Recommendation and Moves for Dismissal Based on 12(b)(6)" (Docket No. 68). On December 28, 2011, Blume again called chambers to inquire why a hearing was not yet noticed on the docket. On December 29, this Court struck "Blume's Motion Objecting to the Court's Report & Recommendation and Moves [sic] for Dismissal Based on 12(b)(6)" for failing to meet the requirements of the federal and local rules. (*See* Case Management Order, Dec. 29, 2011 (Docket No. 71), at 3-4.) The Court also reminded Blume that his failure to file a Notice of Hearing and his repeated calls to chambers violated this Court's Order and, again, cautioned him that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-

complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.*

Less than one month later, this Court addressed Blume's Motion to Dismiss 12(b)(6) Counts I and II Extortion and Defamation, in the Alternative Stay Pending Appeal or Transfer Based on Forum Non Conveniens, Joinder Issues to the Southern District of Iowa (Docket No. 80) on referral from Judge Kyle. *See* Case Management Order, Jan. 24, 2012 (Docket No. 86). In that Order, the Court noted that Blume had noticed a hearing in front of Judge Kyle "in violation of this Court's Order (Docket No. 61), dated July 14, 2011," which unambiguously instructed Blume that he was "<u>not to schedule or notice hearings.</u>" *Id.* at 2 (emphasis in original). "This second violation" of the Court's Case Management Order (Docket No. 61) also constituted Blume's "last warning" that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.* at 3-4.

### B. Orders to Show Cause

On February 29, 2012, at 12:02 p.m., ADQ's corporate counsel sent chambers an e-mail entitled "Proposed Order Granting ADQ's Motion to Amend Complaint – ADQ v. Blume (Case. No. 11-cv-358 RHK/TNL)." *See* Order to Show Cause & Case Management Order, Mar. 12, 2012 (Docket No. 102), Attach. A. This email was also sent to Blume. *Id.* At 11:53 a.m. earlier that day, ADQ's counsel electronically filed the following documents: Motion of American Dairy Queen Corporation to Amend

4

Complaint (Docket No. 92); Brief In Support of Motion of American Dairy Queen Corporation to Amend Complaint (Docket No. 93); and Certificate of Service (Docket No. 94). The e-mail, thus, complied with D. Minn. LR 7.1 and the ELECTRONIC CASE FILING PROCEDURE GUIDE: CIVIL CASES, at II.G (Oct. 2011), *available at* *http://www.mnd.uscourts.gov/cmecf/reference_guides.shtml*.

At 12:11 p.m., Blume sent a responsive e-mail to chambers. *See* Docket No. 102, Attach. B. The e-mail in its entirety provides:

> I am not allowed to email the court but ADQ is. I do not agree with the amendment ADQ could of used the court to terminate franchises and now after stealing and destroying lives they want to amend to cover up crimes. It is a year later, I have said it before this cover in Minnesota stinks of inpropriety. I will not stipulate to the amendment. This is like going out and committing a crime and then going to the Court and asking them if it is okay. WTF Man.

*Id.* (unmodified from the original). The Court takes judicial notice that "WTF" is an acronym for a profane expression of "incredulity or annoyance." OXFORD ENGLISH DICTIONARY, *Draft Additions "WTF"* (March 2009), *available at* www.oed.com.

At 12:51 p.m., Blume sent a second e-mail to chambers. *See* Order to Show Cause & Case Management Order, Mar. 12, 2012 (Docket No. 102), Attach. C. The second e-mail provides:

> Mr. Killion has admitted to his client illegally collecting fees he has already said he knew the Judges in Minnesota and would be able to do what he wants. The appeal has not been removed and these actions are to cover up crimes and it is ADQ who filed the lawsuit and it is ADQ who has cheated people for over 50 years. It is ADQ who has hid behind a court of friends. ADQ can only win its case in a court that restricts witnesses and parties. Produce the documents they

>requested in Iowa. Now all the sudden ADQ is not a public
>figure this is a joke and cover up in Minnesota.
>
>Guy

*Id.* (unmodified from the original).

As Blume noted in his first e-mail, he was (and is) precluded from contacting chambers via e-mail. The Court's July 14, 2011 Order and its December 29, 2011 Case Management Order both made this fact unmistakably clear. Thus, his two e-mails were knowing violations of earlier court orders. The Court also noted that the Orders issued on December 29, 2011, and January 24, 2012, both identified other violations of court orders. *Id.* at 3. Accordingly, the Court ordered Blume to appear on April 17, 2012, and show cause as to (1) why he should not be held in contempt for his repeated violations of this Court's Orders, and (2) why he should not be sanctioned accordingly. The Court again warned that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.* at 9.

This Court issued a Second Order to Show Cause on April 10, 2012 (Docket No. 113), in which it recited 15 different occasions that Blume represented that he had been physically threatened by ADQ or its associates. The Court found these allegations "vague, lacking details and supporting evidence, and [were] of dubious credibility given that they [were] cited in support of motions to dismiss and transfer venue, and the threats [were] not cited in support of any motion seeking protection, sanctions, or a finding of

6

contempt." *Id.* at 5. It therefore ordered Blume to appear at the already scheduled April 17 hearing and show cause why his statements that he had received death threats and physical threats from ADQ and its associates did not violate Federal Rule of Civil Procedure 11(b)(3). *Id.* Once again, Blume was warned that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.* at 6-7.

At the April 17, 2012 hearing addressing the Orders to Show Cause, Blume stated that he did not have time to comply fully with the Second Order to Show Cause. *See* Order, May 9, 2012 (Docket No. 121), at 3. The Court granted Blume until June 5, 2012, to "file all documents that he wants as part of the record for the Second Order to Show Cause (Docket no. 113)." *Id.* Again, the Court warned Blume that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.* at 3-4. Blume filed no additional documents to include as part of the record for the Second Order to Show cause. He did, however, move to dismiss the complaint and in the alternative to transfer the case to the Southern District of Iowa. (Docket No. 126.) Furthermore, he refused to allow himself to be deposed by ADQ, which forced ADQ to seek an order compelling his deposition from this Court. (Docket No. 129.)

With this circuitous history, on August 6, 2012, this Court issued a Report and Recommendation to United States District Court Judge Richard H. Kyle. (Docket No.

7

153 at 18.) Blume objected to the Report and Recommendation on August 20, 2012. (*See* Docket No. 162.) After careful review, Judge Kyle overruled Blume's objections and adopted the Report and Recommendation "insofar as it concludes that Blume has violated Rule 11." Order, Sept. 7, 2012 (Docket No. 170), at 2. Judge Kyle directed Blume not to "construe [his] Order . . . as countenancing his misconduct" and warned Blume "**in the strongest possible terms that continued violation of Court Orders or other misconduct *WILL* result in the imposition of additional sanctions and may result in the Court undertaking contempt proceedings against him, should circumstnaces warrant.**" *Id.* (emphasis in original). Judge Kyle then remanded the issue to this Court "to determine an appropriate sanction to be imposed under Rule 11 for Blume's misconduct." *Id.*

### C. Blume's Court-Ordered Deposition

On August 3, before this Court issued its Report and Recommendation to Judge Kyle, it heard oral argument on ADQ's Motion to Compel Defendant Guy Blume to Respond to Requests to Produce Documents and Sit for a Deposition (Docket No. 129). After careful consideration, ADQ's Motion was Granted in Part and Denied Without Prejudice in Part. (See Order, Aug. 22, 2012 (Docket No. 160).) The Court ordered Blume to make himself available to sit for a deposition in accordance with Fed. R. Civ. P. 30. Specifically, the Order provided:

> This court concludes that ADQ's deposition notice is proper under Fed. R. Civ. P. 26(b)(1), 30, and 37(a)(1)(B)(i). ADQ's motion to compel Blume's deposition is, therefore, granted. Within 30 days of the date of this Order, Blume shall make himself available on weekday in the District of Minnesota for

8

> a deposition by oral examination under Fed. R. Civ. P. 30.
> The parties shall cooperate in good faith to find a mutually
> agreed upon date for Blume's deposition.

*Id.* at 2-3. At the end of the Order, the Court once more warned that "[f]ailure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including . . . entry of whole or partial default judgment." *Id.* at 5.

The parties scheduled Blume's deposition for September 19, 2012. In the days leading up to the scheduled deposition, Blume informed ADQ's counsel that he would "be objecting to any questions regarding [ADQ's] alleged Defamation and extortion charges until [he had] a chance to respond to the complaint." Killion Decl. (Docket No. 222) Ex. F at 4. After extensive conversation, Blume clarified that he would not answer "any questions" at the deposition. *Id.* Ex. G at 1. ADQ's counsel asked if Blume would agree to engage this Court's informal process to resolve non-dispositive disputes, *see* Pretrial Sched. Order, April 19, 2012 (Doc No. 118), at n.2, so that the deposition could take place. Blume was "not interested in the process" and stated that he would attend the deposition and make his objections, but refuse to answer any questions until he answered the complaint and filed counterclaims. Killion Decl. (Doc. No. 222) Ex. H at 1.

ADQ's counsel arranged for the parties to have a court-reported conference call the day before the scheduled deposition. *Id.* Ex I. During this call, Blume stated the following under oath:

> I object under the Sixth and Fourteenth Amendment under my due process laws. I have yet to answer the complaint by American Dairy Queen. The Court has yet to rule on a motion

9

>> to dismiss the defamation and extortion and other actions in the court. Under the criminal act of extortion the parties were unable to come up to an agreement for a protective order that my testimony would only be used in this case. Therefore, without the appointment of a lawyer, if the court holds the extortion charge I will seek immediately appointment of a lawyer to represent me in this matter. I do not have the money to afford an attorney, and under the criminal act of extortion I would request that the Court after it makes its ruling if it rules to the extortion charge to continue I have asked for the Court to appoint me an attorney to represent me at that time. I will answer any and all questions once an attorney is appointed to me based on the extortion charge or the court rules on the action to the motion to dismiss and give me the right to answer the complaint and file my counterclaims so it does not violate my due process of law.

*Id.* at 5-6. ADQ's counsel then asked, if the parties convened for the schedule deposition, whether Blume would end the deposition after reciting the above-quoted statement. *Id.* at 6. Blume responded, "Yes, sir." *Id.* The parties then concluded the call, and the deposition was cancelled.

### D. Subsequent Filings, Orders, and the Present Motion before the Court

After refusing to sit for his Court-ordered deposition as outlined above, Blume filed several motions and papers with the Court, including but not limited to the following: a Brief in Support of Defendant's Motion for Production of Documents and Deposition (Docket No. 181); four Third Party Complaints (Docket Nos. 182-85) and supporting Exhibits (Docket No. 186); a Motion to Terminate Deposition Granting Stay (Docket No. 188) with supporting Brief (Docket No. 189) and Declaration (Docket No. 190); four Motions for Declaratory Judgment (Docket Nos. 191, 194, 199, 213) with supporting documentation (Docket Nos. 192-93, 195-97, 200, 214-15) requesting the

Court to interpret specific contracts; a Motion Request of the Court to Interpret Its Order (Docket No. 227); and a Motion Requesting Leave to File Motion to Transfer to the Southern District of Iowa (Docket No. 233). Despite this Court's clear warnings (*see, inter alia*, Order, July 14, 2011 (Docket No. 61) at 3; Case Management Order, Dec. 29, 2011 (Docket No. 71) at 2-3; Case Management Order, Jan. 24, 2012 (Docket No. 86) at 2-3), these Motions did not comply with this Court's earlier Orders or with the Local Rules.

On October 8, 2012, ADQ filed the instant Motion to Quash Various Blume Submissions for Failure to Comply with the Rules as Barred by the Court's Scheduling Order and Motion for Sanctions (Docket No. 219), arguing that several of Blume's filings do not comply with the applicable rules and Orders of this Court, and that the Court should sanction Blume for failing to sit for his Court-ordered deposition by entering default judgment against him. On October 19, 2012, before hearing argument on the instant Motion, this Court issued its Order determining the appropriate sanctions for Blume's Rule 11 violation pursuant to Judge Kyle's order. (*See* Docket No. 236.) The Court concluded that $1,000 was an appropriate sanction for Blume's misconduct. *Id.* at 7-8. In so concluding, the Court specifically noted that a larger monetary sanction or further limitations on Blume's ability to file papers in this case were unnecessary "at this time." *See id.* at 8 n.8. The Court also reinforced Judge Kyle's specific warning "**in the strongest possible terms that continued violation of Court Orders or other misconduct *WILL* result in the imposition of additional sanctions and may result in**

11

**the Court undertaking contempt proceedings against [Blume], should circumstances warrant**." Order, Sept. 7, 2012 (Docket No. 170), at 2 (Kyle, J.) (emphasis in original).

This Court then heard oral argument on ADQ's Motions on October 22, 2012. Meanwhile, Blume's filings continued unabated. He filed an Answer to the Complaint (Docket No. 237), three motions attempting to dispose of various ADQ claims (*see* Docket Nos. 238, 240, 251), and 12 docket entries containing briefing papers, exhibits, or other various supporting materials. He also filed an Objection to this Court's sanctions determination (*see* Docket No. 262). In addition to his filings in the District of Minnesota,[2] Blume also filed two appeals to the Eighth Circuit: one appealing this Court's venue determination (Docket No. 257); and the other appealing Judge Kyle's Order overruling Blume's objections to the sanctions determination (Docket No. 267). While these appeals were pending, this Court stayed all proceedings in this action. (Docket No. 259.) The Circuit dismissed both appeals as premature, and jurisdiction has now returned to this Court. (Docket No. 275.)

The Court, therefore, can proceed to examine ADQ's Motion to Strike and Motion for Sanctions.

---

[2] Blume has made filings in at least one other federal district, as well. In an order restricting Blume's filing privileges in the United States District Court in the Southern District of Iowa, Chief Judge Robert W. Pratt determined that "Blume's motion practice and failure to understand applicable legal processes has reached the point that it has become vexatious, oppressive, and harassing to both the Court and to opposing litigants. While Blume has opted, wisely or not, to represent himself in lawsuits in this Court, no other party should be forced to expend scarce resources responding to Blume's consistently unmeritorious and often frivolous filings." Order, Aug. 3, 2012 (Docket No. 176), *Blume v. Am. Dairy Queen, et al.*, Case No. 4:11-cv-178 (*Blume '178*), at 2 (S.D. Iowa).

## III. DISCUSSION

### A. ADQ's Motion to Strike Various Blume Submissions

At the time the Court heard oral argument on ADQ's motions, several Motions and submissions filed by Blume were outstanding on this case's docket. ADQ's Motion seeks to strike the Motions filed at Docket Nos. 181-85, 188, 191, 194, 199, and 209, arguing that none of these filings comported with this Court's Scheduling Order. The Court agrees.

The Pretrial Scheduling Order set June 1, 2012, as the deadline for motions seeking to amend the pleadings to add claims or parties and July 15, 2012, as the deadline for discovery Motions. (*See* Docket No. 118.) Blume filed a Brief in Support of Defendant's Motion for Production of Documents and Deposition (Docket No. 181) on September 19, 2012. By filing this memorandum, Blume violated (1) the Pretrial Scheduling Order by filing a purported motion two months after the deadline for motions relating to discovery matters; (2) Local Rule 7.1(i) by filing an unsolicited memoranda of law without the court's prior permission; and (3) Local Rule 7.1(b)(1) by not simultaneously filing an accompanying motion, notice of hearing, meet-and-confer statement, and a proposed order, despite the Court having repeatedly reminded Blume that he must abide by all court orders and the Local Rules.

Although courts generally grant leeway to *pro se* litigants, *see, e.g.*, *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993) ("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding."), *pro se* litigants are "not

13

excused from complying with substantive and procedural law." *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986). Blume has been given enough chances and warnings. Accordingly, because Blume's Brief In Support of Defendant's Motion for Production of Documents and Deposition (Docket No. 181) violates a court order and multiple Local Rules, it will be stricken.

Several of Blume's other Motions suffer from similar deficiencies. His Motion to Terminate Deposition Granting Stay (Docket No. 188) was filed two months after the discovery motion deadline in the Pretrial Scheduling Order and was not accompanied by the documents required by Local Rule 7.1(b)(1).[3] His Third-Party Complaints (Docket Nos. 182-85) were filed three-and-a-half months after the deadline to add parties; he did not seek leave of the Court; and he did not adhere to the requirements laid out in the Pretrial Scheduling Order. To date, Blume has yet to request this Court's leave to add parties to the action. Because he has failed to comply with this Court's earlier Orders when filing these Motions and pleadings, Blume's Motion to Terminate Deposition Granting Stay (Docket No. 188) and his Third Party Complaints (Docket Nos. 182-85) will be stricken.

Blume has also filed five Motions seeking declaratory relief. (*See* Docket Nos. 191, 194, 199, 209, 212.) Specifically, Blume asks this Court to enter declaratory judgments interpreting various contracts that he asserts will dispose of the case. "Because an action for a declaratory judgment is an ordinary civil action," however, "a

---

[3] The deposition that Blume seeks to terminate is the same deposition in which this Court ordered Blume's participation. (*See* Order, Aug. 22, 2012 (Docket No. 160), at 2-3.)

party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for declaratory relief." *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (emphasis in original).  Rule 57 establishes requirements that a litigant must meet to obtain a declaratory judgment.  *See* Fed. R. Civ. P. 57.  Blume's Motions fail to meet Rule 57's strictures.  Accordingly, Blume's Motions for Declaratory Judgment (Docket Nos. 191, 194, 199, 209, 212) are inconsistent with the Federal Rules and with earlier Court Orders, and they will be stricken.

### B. ADQ's Motion for Sanctions

In light of Blume's blatant violation of this Court's Order directing him to sit for deposition and given Blume's contumacious conduct throughout this case, ADQ requests the ultimate sanction—entry of default judgment.  Federal Rule of Civil Procedure 37(b)(2)(A)(vi) provides that a court may sanction a party for not obeying a discovery order by "rendering a default judgment against the disobedient party."  Rule 37(d)(1)(A)(i) provides that a court may order sanctions listed in Rule 37(b)(2)— including entry of default judgment—if "a party . . . fails, after being served with proper notice, to appear for that person's deposition."  Default judgment, however, remains an extreme sanction, and there remains "a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court."  *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999) (citation omitted).

In determining what sanctions are appropriate, courts "must consider all of the evidence and circumstances that tend to provide a 'complete understanding of the parties' motivations' including 'a party's actions in a related case.'"  *Int'l Bhd. of Elec. Workers,*

15

*Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1106 (8th Cir. 2004) (citing *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998)). Default judgment, the most extreme option, is not appropriate for a "marginal failure to comply with time requirements," *United States v. Harre*, 983 F.2d 138, 130 (8th Cir. 1993), but rather is reserved for situations where the party against whom the sanction is sought has engaged in "willful violations of court rules, contumacious conduct, or intentional delays." *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (quotation and citation omitted). The final determination of an appropriate sanction is left to the Court's discretion. *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992).

  Blume's extreme actions in this litigation justify that default judgment be entered against him in favor of ADQ. Blume has violated Rule 37(d) by failing to sit for a duly-noticed deposition. This failure is made worse by the fact that this Court granted ADQ's Motion to Compel and explicitly ordered that Blume make himself available for deposition. *See* Order, August 22, 2012 (Docket No. 160), at 2-3. Moreover, Blume has violated Rule 37(b) by failing to comply with multiple Court Orders. Blume has filed Motions and supporting documents with no regard to the Federal Rules, the Local Rules, the Pretrial Scheduling Order, or this Court's numerous explicit Orders and warnings reminding him that Motions must comply with the Federal and Local Rules.

  This Court has been patient with Blume. When he persisted in calling chambers for information or advice concerning Motions before the Court, for example, this Court only restricted him from calling or e-mailing chambers directly and from noticing and scheduling hearings. *See* Order, July 14, 2011 (Docket No. 61). When Blume violated

that Order and contacted chambers directly in regards to two later motions, this Court simply struck the violative filings and reminded Blume that further failure to comply with a Court Order could result in, *inter alia*, entry of whole or partial default judgment. Case Management Order, Dec. 29, 2011 (Docket No. 71), at 3-4.  When Blume again violated this Court's Order by noticing and scheduling a hearing in front of Judge Kyle, this Court again simply struck the violative filings and, once more, reminded Blume that further failure to comply with a Court Order could result in, *inter alia*, entry of whole or partial default judgment.  Case Management Order, January 24, 2012 (Docket No. 86), at 3-4.

Even after this Court issued two Orders to Show Cause and held a hearing addressing whether Blume should be sanctioned for not complying with this Court's previous Orders, he has continued to flout them.  Since Judge Kyle's order to determine appropriate Rule 11 sanctions to this Court on September 7, 2012, Blume has filed *69* different substantive entries on ECF—including, *inter alia*, four Third-Party Complaints, 20 separate motions, 39 filings containing briefs or supporting documents, and two notices of appeal to the Eighth Circuit.  That averages out to more than 4 substantive filings per week—including the seven-week stay period during which this Court could not exercise jurisdiction over the case pending Blume's appeals.  Notably, none of the Motions Blume has filed since Judge Kyle's September 7, 2012 Order have complied with this Court's July 14, 2011 Order.  Blume has filed non-dispositive Motions after the July 15, 2012 deadline established by the Pretrial Scheduling Order.  Blume has been ordered repeatedly by this Court, and by Judge Kyle, to abide by the Local Rules and the Federal Rules of Civil Procedure.  He has been warned several times that further failure

17

to abide by the rules and earlier Orders of the Court "**will result in the imposition of additional sanctions and may result in the Court undertaking contempt proceedings against him, should circumstances warrant.**" Order, Sept. 7, 2012 (Docket No. 170), at 2 (Kyle, J.) (emphasis in original). He has been sanctioned for violating Rule 11. Importantly, this Court warned Blume in no uncertain terms on no less than eight different occasions—not to mention Judge Kyle's explicit warning—that failing to follow all rules and obey all Orders of this Court could result in entry of default judgment.

It has become apparent to this Court that further warnings and lesser sanctions will not rein in Blume's conduct such that this litigation could proceed in a just, speedy, and orderly fashion. "In this circuit, before dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith." *Avionic Co.*, 957 F.2d at 558 (citation omitted) (emphasis in original). Indeed, Blume's inability to follow court orders is not limited to this litigation. His pattern of "filing 'affidavits' that contain little more than [his] interpretation of what he believes the law is, refiling claims that have been previously dismissed, and generally inundating the Court with motions that are without any evidentiary or legal support" caused Chief Judge Pratt to impose filing restrictions on Blume in the Southern District of Iowa. Order, Aug. 3, 2012 (Docket No. 6), *Blume v. Oshlo Wilkinson Dairy Queen, et al.*, Case No. 4:12-cv-310, at 8 n.9 (S.D. Iowa); *see also* Order, Aug. 3, 2012 (Docket No. 176), *Blume '178*, at 2 (S.D. Iowa) (Pratt, C.J.) ("Blume's motion practice and failure to understand applicable legal processes has reached the point that it has become vexatious, oppressive, and harassing to both the

Court and to opposing litigants. While Blume has opted, wisely or not, to represent himself in lawsuits in this Court, no other party should be forced to expend scarce resources responding to Blume's consistently unmeritorious and often frivolous filings.")

Blume's vexatious, duplicative, and harassing conduct came with him from the Southern District of Iowa to the District of Minnesota. He has been repeatedly and explicitly warned about failing to comply with applicable law and Court rules. Blume has filed duplicative motions, motions and pleadings after the applicable deadlines without leave of the Court, motions requesting relief that this Court has already explicitly denied, and at least one Third Party Complaint asserting a claim that Chief Judge Pratt dismissed with prejudice. *See* Third Party Complaint, Sept. 19, 2012 (Docket No. 184), *and* Order, Aug. 27, 2012 (Docket No. 168), *Blume '178*, at 4 (S.D. Iowa) (dismissing, *inter alia*, Blume's collusion claim against EE Sorenson, LLC and Edward E. Sorenson with prejudice). This Court has explored alternatives to entry of default judgment and found none. Chief Judge Pratt was prescient. History and experience inform this Court that giving Blume more chances will only compound the unnecessary complications this case has already endured. Based on the foregoing, the Court concludes that entry of default judgment against Blume is an appropriate sanction in this case.

IV.     CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. ADQ's Motion to Strike Various Blume Filings (Docket No. 219) be **GRANTED**, and Docket Nos. 181-85, 188, 191, 194, 199, and 209 be **STRICKEN** ;

2. ADQ's Motion for Sanctions (Docket No. 219) be **GRANTED**, and the Clerk of Court be directed to **ENTER DEFAULT JUDGMENT** against Blume; and

3. all outstanding Motions (Docket Nos. 165, 167, 201, 212, 213, 227, 230, 233, 238, 240, 251, 262, 272, and 273) be **DENIED AS MOOT**.

Date:  January 11, 2013	    s/ *Tony N. Leung*
    Tony N. Leung
    United States Magistrate Judge

    *American Dairy Queen Corp. v. Blume et al.*
    File No. 11-cv-358 (RHK/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court by **January 25, 2013**.